This is a proceeding brought by plaintiff against defendants to restrain them from selling certain real property under power contained in a deed of trust. A temporary restraining order was duly issued and the cause came on to be heard on motion of plaintiff to continue the restraining order to the hearing.
The judgment of the court below is as follows: "This cause coming on to be heard, and being heard on 14 September, 1936, by his Honor, *Page 782 
J. A. Rousseau, Judge presiding over the courts of the Thirteenth Judicial District, in Chambers at Wadesboro, N.C. the motion of the plaintiff for a restraining order to be continued to the hearing having been continued, by consent of all the parties, to this date and place: And it appearing to the court and the court finding facts as follows:
"(1) That on 18 January, 1930, Mrs. Maie Dennis executed and delivered to J. R. Henderson a deed conveying the lands set out and described in the complaint filed herein and used as an affidavit, which deed was recorded on 20 March, 1930, in Book 207, page 123, Richmond County registry; that J. R. Henderson and wife, on 15 February, 1930, executed and delivered to the Commercial National Bank of High Point, N.C. their deed of trust to secure the payment of a note in the amount of $3,150, said note being made payable to bearer at the office of the Charleston National Bank, Charleston, West Virginia; that said deed of trust was recorded on 6 March, 1930.
"(2) That on 6 March, 1930, J. R. Henderson and wife reconveyed the land described in the complaint to the plaintiff herein by deed recorded in Book 207, page 237, Richmond County registry.
"(3) That thereafter J. R. Henderson died, to wit: On 26 May, 1930, and E. N. Rhodes was duly appointed collector of the estate of the said J. R. Henderson, and thereafter filed his final report showing assets in hand of only $59.11, no executor or administrator having ever qualified, the report of said E. N. Rhodes, collector, being duly filed in Record of Settlements No. 4, page 348, office of the clerk of the Superior Court of Richmond County, File No. 898-A, a copy thereof being hereto attached.
"(4) That from 2 April, 1930, through 21 June, 1933, the plaintiff made payments aggregating $660.00.
"(5) That on 21 November, 1933, the Commercial National Bank of High Point, N.C. trustee, and John Biggs, receiver, advertised the land described in the complaint, and described also in the aforesaid deed of trust for sale on 23 December, 1933, and that on 14 December, 1933, Hon. A. M. Stack, one of the judges of the Superior Court, issued a temporary restraining order restraining the sale; that as a basis for said restraining order the plaintiff herein filed an affidavit and complaint wherein she alleged the execution and delivery of the deed of trust hereinabove referred to, to secure the payment of the note payable to bearer, and further alleged, `The notes being made payable to bearer, but in fact were made payable to the Commercial National Bank of Charleston, West Virginia, whose place of business was at Charleston, West Virginia; that thereafter, on or about 6 March, 1930, the said J. R. Henderson and wife, Jennette Henderson, conveyed by deed to Maie Dennis the property described in the deed of trust; the said Maie Dennis assuming the *Page 783 
indebtedness thereon'; that the said Maie Dennis made payments as provided in the deed of trust in excess of $600.00 on the original indebtedness of $3,150.
"(6) That, in addition to the payments made by the plaintiff above referred to, the sum of $1,235.84 was collected by the defendant as proceeds of fire loss on 27 December, 1934, as found by Judge Clayton Moore in an order dated 28 May, 1935, a copy being hereto attached as `Exhibit A.'
"(7) That the plaintiff has paid no taxes on the property described in the complaint and in the deed of trust to the town of Hamlet or the county of Richmond for the years 1931 to 1935, inclusive.
"(8) That in May, 1936, the defendant Anthony Redmond, successor trustee, duly advertised the lands described in the deed of trust for sale under the power contained therein on 1 June, 1936, and that after said sale was held, that the plaintiff Mrs. Maie Dennis, on the 10th day thereafter, raised the bid to $1,575 on said property as by statute provided, and that thereafter the lands were readvertised and reoffered for sale on 3 July, 1936, and temporary restraining order was secured as hereinabove referred to on 13 July, 1936.
"(9) That the plaintiff in the complaint filed herein alleges the due execution and delivery of the deed of trust from J. R. Henderson and wife to secure the payment of the note described therein and secured thereby, and further alleges certain payments, including the collection of $1,235.84 from an insurance company on account of damage to the mortgaged property by fire.
"(10) That while the plaintiff admits certain payments on said note, and that there is a balance due and unpaid thereon, she has not made any tender or offer to pay any amount whatsoever.
"(11) That the plaintiff has not offered to do equity and is not entitled to receive equity or any equitable relief on the showing made at this hearing.
"It is now, on motion of Thomas H. Leath, in propria persona, and of Varser, McIntyre Henry, attorneys for defendants, considered, ordered, and adjudged that the motion of the plaintiff to continue the restraining order until the hearing be and the same is hereby denied, and that the temporary restraining order heretofore issued in this cause be and the same is hereby in all respects dissolved.
J. A. ROUSSEAU, Judge Presiding."
To the foregoing judgment the plaintiff excepted, assigned error, and appealed to the Supreme Court.
The only exception and assignment of error made by plaintiff is "to the foregoing judgment." A case where the facts are similar in all respects to the present one is that of Ingram v. Mortgage Co., 208 N.C. 329. At page 330, it is said: "The first exception is to the judgment itself. This judgment is regular upon its face, and the facts found by the trial judge are sufficient to support the decree. Consequently, the first exception must fail. Warren v. Bottling Co., 207 N.C. 313; Moreland v. Wamboldt,ante, 35. The second exception is `to the finding and signing of the order of the findings of facts.' It is to be observed that the plaintiff requested no findings of facts and there is no specific exception to any particular finding of fact. Obviously, some of the findings of fact are necessary and beyond question. The Court is not endowed with the gift of prophecy, and, therefore, is unable to determine which particular finding of fact is objectionable to the plaintiff. Hence, the second exception must likewise fail."
In the record the facts are practically undenied, and those found by the court below are supported by the evidence. On the above authority the judgment of the court below must be affirmed.
As the merits of the cause are urgently argued by the plaintiff, we will consider same. The plaintiff contends: (1) "Did his Honor have a right to pass upon and determine the disputed facts without the intervention of a jury?" On the whole record, we do not think that there were sufficient facts disputed to continue the restraining order to the hearing for a jury to determine.
Hoke, J., in Grantham v. Nunn, 188 N.C. 239 (242), speaking to the subject, says: "In Sutton v. Sutton, supra (183 N.C. 128), wherein the lower court dissolved the restraining order and entered judgment for defendant, the governing principle is stated as follows: `Upon the hearing by the judge upon the question of continuing a restraining order to the hearing, the judge, upon proper findings (and it may be added on the evidence presented and without findings), may dissolve the temporary order, but in doing so it is error for him also to determine an issue of fact material to the rights of the parties and which should be reserved for the jury to pass upon at the trial.' " Tomlinson v. Cranor, 209 N.C. 688. Of course, the litigants may consent that the court try the cause. HersheyCorp. v. R. R., 207 N.C. 122 (125).
The undisputed facts: (1) On 18 January, 1930, plaintiff made and executed a deed to her brother, J. R. Henderson, for the land in controversy, which was duly recorded on 20 March, 1930. (2) J. R. Henderson and wife, on 15 February, 1930, executed and delivered to the Commercial National Bank of High Point, N.C. a deed of trust to secure the payment of a note in the amount of $3,150. Said deed of trust was duly recorded on 6 March, 1930. (3) On 6 March, 1930, J. R. Henderson *Page 785 
and wife reconveyed the land to plaintiff, which deed was duly recorded. (4) The land was advertised for sale under the deed of trust and plaintiff, on 14 December, 1933, obtained a restraining order. In her complaint and affidavit she states: "That thereafter, on or about 6 March, 1930, the said J. R. Henderson and wife, Jennette Henderson, conveyed by deed to Maie Dennis the property described in the deed of trust; the said Maie Dennisassuming the indebtedness thereon; that the said Maie Dennis made payments as provided in the deed of trust in excess of $600.00 on the original indebtedness of $3,150."
In Wiltsie on Mortgage Foreclosure (4th Ed.), Vol. 1, sec. 237, is the following: "An agreement by the grantee of mortgaged premises to assume or pay the mortgaged indebtedness, may be embodied in the deed, may appear in separate instruments, or may rest in parol. Or the agreement may be implied from all the facts and circumstances existing in connection with the transfer of the property, and may appear without any formal promise. . . . Where the contract of sale provided that the purchaser should pay the mortgage, he is liable though deed to him merely excepted the mortgage from the covenant of warranty. An oral agreement by a purchaser to assume or pay a mortgaged indebtedness upon the premises is valid and enforceable though the conveyance contains no such agreement. (Citing Parlier v. Miller,186 N.C. 501.) And an oral agreement by a purchaser to assume a mortgaged indebtedness is not within the statute of frauds where it has the original transfer to support it as a consideration."
The plaintiff assumed the indebtedness in the deed of trust, $3,150, and the taxes and insurance which were tacked on in the deed of trust and made a part of same. In the proceeding of 1933 for injunctive relief by plaintiff, she alleges that she paid on the $3,150 in excess of $600.00.
The principal of the debt was $3,150, there were credits of $660.00 paid in 17 different payments, the last 6/21/33. Fire loss draft 12/27/34, $1,235.84, insurance $105.13, taxes $604.60 paid at different times, and interest on advances left a total due 8/15/36 of $3,077.32. The land was duly advertised to pay the indebtedness on 1 June, 1936, and bid in by the Metropolitan Realty Company for $1,500. Plaintiff raised the bid and the property was resold on 3 July, 1936, and bid in by the same company for $2,000. The plaintiff did not raise the bid, but, within 10 days, on 11 July, 1936, instituted this proceeding and the temporary restraining order was secured on 13 July, 1936. From the record it appears beyond question that the above amount is due on the note and deed of trust, with taxes and insurance, which plaintiff assumed.
The plaintiff alleges that various concerns have made demand on her for this indebtedness; be that so, she owes the indebtedness and there is *Page 786 
no evidence on her part that the defendants did not represent the owner of the indebtedness, and, in fact, defendant Redmond so stated in his affidavit, "is owned and held by the Charleston National Bank of Charleston, West Virginia, as trustee," etc., and he was duly appointed substitute trustee in said deed of trust. In the proceeding of 1933 for restraining order, plaintiff contended she had paid in excess of $600.00. She was given credit for $660.00. In her complaint she alleges that a house on the lot was burned and $1,235.84 was collected as insurance. She has been credited with same on her indebtedness.
(2) Is the plaintiff entitled to an accounting in order to find out the balance due on a deed of trust, to which her ownership of the land is subject, without making an actual tender of some sum of money? We think not under the facts and circumstances of this case. She has paid nothing on this indebtedness since 1933, up to that time she had paid $660.00. The insurance amount collected was easily obtainable; in fact, in her complaint she alleges the exact amount due on fire loss, $1,235.34. In the exercise of due care she could have ascertained the exact amount due, including taxes and insurance, which were tacked on to the deed of trust, and tendered same. She was given several years in which to pay this indebtedness, but has not done so. It is said in Wilson v. Trust Co.,200 N.C. 788 (791): "Until this amount, which is in controversy between plaintiff and the answering defendants, has been ascertained and definitely determined, plaintiff is entitled to have the sale of the land described in the complaint, under the power of sale contained in the deed of trust, enjoined and restrained. Parker Co. v. Bank, ante, 441, 157 S.E. 419."Porter v. Ins. Co., 207 N.C. 646 (647). On the entire record plaintiff knew or in the exercise of due care could have known the exact amount due on the indebtedness, and tendered same.
(3) Is the plaintiff entitled to require the holders of the note, secured by said deed of trust, to file their claim with the personal representative of the maker of said note and the grantors in said deed of trust and proceed in an effort to collect said indebtedness thereby before proceeding to foreclose the deed of trust on the land of which the plaintiff is the equitable owner? We think not.
J. R. Henderson died on 26 May, 1930. The collector of the estate of J. R. Henderson, after the receipts and disbursements were accounted for, had left on hand $59.11. We do not think this material, as the owner of the note and deed of trust could resort for payment of the debt foreclosing under the power of sale contained in the deed of trust.
In Leak v. Armfield, 187 N.C. 625 (628), speaking to the subject, this Court said: "It nowhere appears in the record that Chase Boren consented to the procedure in which she was made a party or waived any right. This being so, from the facts found by the court below as a matter *Page 787 
of law, we think that the restraining order ought not to have been granted. If subsequent judgment creditors or litigants over the equity of redemption could `tie up' a first mortgage and effect its terms, it would seriously impair a legal contract. It may be `hard measure' to sell, but this is universally so. The mortgagee has a right to have her contract enforced under the plain terms of the mortgage. To hold otherwise would practically nullify the present system of mortgages and deeds of trust on land, so generally used to secure indebtedness and seriously hamper business. Those interested in the equity of redemption have the right of paying off the first lien when due. We can see no equitable ingredient in the facts of this case. The mortgage is not a `scrap of paper.' It is a legal contract that the parties are bound by. The courts under their equitable jurisdiction, when the amount is due and ascertained — no fraud or mistake, etc., alleged — have no power to impair the solemn instrument directly or indirectly by nullifying the plain provisions by restraining the sale to be made under the terms of the mortgage."
The case of Moseley v. Moseley, 192 N.C. 243, cited by plaintiff, is in no sense applicable. That case construed N.C. Code, 1935 (Michie), sec. 74. No mortgagee or trustee was endeavoring to foreclose, nor were they made parties to the proceeding. In the present case the power of sale was being carried out under the terms of the instrument. The Moseley case,supra, is so different from the present case that "He that runs may read."Bank v. Purvis, 201 N.C. 753; Teeter v. Teeter, 205 N.C. 438; Kenny Co.v. Hotel Co., 206 N.C. 591; Miller v. Shore, 206 N.C. 732.
It is held in this jurisdiction, and the weight of authority by text writers and decisions all over the nation are to the effect that it was not necessary for the mortgagee to file his claim for allowance with the personal representative of the deceased mortgagor before proceeding to foreclose on the mortgaged property, and that the failure to file the claim for payment out of the general funds of the estate did not affect the right of the mortgagee to foreclose under power of sale in the mortgage. Millerv. Shore, supra.
We have examined the record and the elaborate and carefully prepared briefs of the litigants with care. The brief of the defendants filed in the cause by Thomas H. Leath and his associates was most helpful in writing this opinion. The brief was not only persuasive, but convincing.
For the reasons given, the judgment of the court below is
Affirmed. *Page 788