JAMES B. CARROLL AND WIFE, JEAN CARROLL v. E. A. PARKER, TRUS-
TEE, AND Z. B. BYRD, JR. AND WIFE, MARIE STEPHENSON BYRD

No. 6811SC295

(Filed 16 October 1968)

**1. Mortgages and Deeds of Trust § 13—  right of trustor in timber on
land secured by deed of trust**

The cestui que trust of a deed of trust is liable to the trustors for tim-
ber cut on the lands secured by the deed of trust at the instance of the
cestui or through his agency and for his benefit, absent a special agree-
ment with the trustors which would relieve the cestui of such liability.

**2. Mortgages and Deeds of Trust § 13—  action by trustors for ac-
counting of cut timber — necessity of tender**

The fact that plaintiffs-trustors made no tender of the balance due on
notes secured by a deed of trust does not bar them from bringing action
against the cestui of the deed of trust for an accounting for cestui's
wrongfully cutting of timber on plaintiffs' land, since plaintiffs do not
seek to redeem the instruments and since the credits to which the plaintiffs
allege they are entitled will pay all amounts due in the controversy.

**3. Mortgages and Deeds of Trust § 13—  trustors' action for account-
ing — sufficiency of evidence**

In an action by plaintiffs-trustors against the cestui of a deed of trust
to restrain foreclosure proceedings and for an accounting for the wrongful
cutting and removal of timber from the trustors' lands secured by the
deed of trust, the evidence is sufficient to support a jury finding that (1)
the cestui entered upon plaintiffs' lands and without their permission or
consent cut timber therefrom without making an accounting to the plain-
tiffs, and that (2) the value of the timber cut by the cestui was sufficient,
if properly credited to the debt, to leave the note secured by the deed of
trust not in default at the time foreclosure proceedings were initiated by
the cestui.

APPEAL by plaintiffs from *Canaday, J.,* January 1968 Civil Ses-
sion of JOHNSTON Superior Court.

In September 1962, plaintiffs purchased from Z. B. Byrd, Jr. and
his wife, Marie Stephenson Byrd, a 17.95 acre tract of land in Eleva-
tion Township, Johnston County, North Carolina. At the time of
purchase, they gave their note to the Byrds in the amount of $15,000,
representing the balance of the purchase price. The note was payable
in annual installments of $1,000 plus interest at 6% on unpaid prin-
cipal and was secured by a deed of trust to E. A. Parker, Trustee,
conveying the lands purchased from the Byrds.

The complaint alleges, and the evidence tends to show, that the
installments were paid through the 1965 installment. All of the in-
terest due was paid with the exception of a balance of $180 due with
the 1965 installment. The complaint further alleges that plaintiffs

were ready, willing and able to pay that balance when they learned that defendant Z. B. Byrd, Jr., had wrongfully entered upon the lands and cut and removed the timber therefrom; that thereupon plaintiffs advised defendant Byrd that they would not make the 1966 payment nor the payment of the $180 balance due on interest; that the timber cut had a reasonable value of at least $2,000 which should be credited to the indebtedness and that when plaintiffs were given due credit for the timber wrongfully cut, no payment would be due and the note would not be in default and the deed of trust would not be subject to foreclosure; that the plaintiffs were damaged in the sum of $3,000 by reason of the unlawful entry and manner of removal of the timber by use of a "tree farmer" thereby destroying large quantities of young timber, failure to conserve the laps, and allowing trees to fall on tobacco bed. Plaintiffs further alleged that defendants had never given plaintiffs an accounting for the timber sold, had not credited any amount on the note, and had made no effort to repair the damages to the land by reason of the wrongful removal of the timber; that despite this, defendants had instituted foreclosure proceedings on 22 May 1967. The plaintiffs requested that the sale be restrained until the matters and things set out in the complaint can be determined; that plaintiffs have and recover $2,000 of defendants for the wrongful cutting of the timber, the same to be applied as a credit on the note; that the court find the deed of trust not in default and not subject to foreclosure; and that plaintiffs have and recover $3,000 damages to their lands.

Defendants by answer admitted the payments made, denied that defendant Byrd had wrongfully cut the timber, denied allegations of damage to the land, denied that the note was not in default when the foreclosure was begun, and averred that the male plaintiff had contracted with defendant Byrd in the fall of 1964 to have defendant Byrd construct a farm pond on other land of plaintiffs in Pleasant Grove Township, Johnston County, at a price of $700; that the pond was constructed but plaintiffs did not pay therefor and in the late summer of 1965, the male plaintiff requested defendant Byrd to cut the timber on the 17.95 acre tract and apply the proceeds to the amount due for the pond construction; that the net value of the timber cut was $438.45.

Plaintiffs by their reply denied these averments and alleged that there was a contract to construct a pond on the homeplace farm of plaintiffs which is about 12 miles from the lands involved in this litigation; that the pond was constructed but, because of inadequate equipment, defendant Byrd was not able to construct it according to

specifications and male plaintiff advised defendant Byrd that he would not be paid therefor until the pond was properly constructed; that plaintiffs had never authorized defendant Byrd to cut any timber on the 17.95 acre tract and had no knowledge of the amount received by defendant Byrd for the timber until the answer was filed; that the pond contract is a complete and separate transaction from the "mortgage indebtedness" set forth in the complaint.

A temporary restraining order was entered 23 June 1967 and on 2 December 1967 Canaday, J., entered an order continuing it "until the issues raised in the pleadings can be determined by a jury trial." At the trial of the matter, the court sustained defendants' motion for nonsuit at the close of plaintiffs' evidence, and entered judgment dismissing the action and dissolving the restraining order. Plaintiffs appealed.

*Lyon & Lyon by W. Pope Lyon for plaintiff appellants.*

*E. A. Parker and Harris & Harris by Jane P. Harris for defendant appellees.*

MORRIS, J.

This appeal raises only one question; *i.e.*, was the nonsuit properly entered.

Plaintiffs seek an accounting for timber cut from their lands by defendant Z. B. Byrd, Jr., holder of a note given to him and defendant Marie Stephenson Byrd, which note is secured by a purchase money deed of trust conveying the lands to defendant E. A. Parker, Trustee. They contend that the note was not in default at the time foreclosure was initiated because they were entitled to a credit on the note for the timber wrongfully cut, and they ask that the pending foreclosure be restrained until the matters set out in the complaint can be determined.

In support of their position, plaintiffs rely on *Harrison v. Bray,* 92 N.C. 488, and *Brown v. Daniel,* 219 N.C. 349, 13 S.E. 2d 623.

In the *Harrison* case, plaintiff brought an action to compel an accounting. She had executed to defendant a note for $400 secured by a mortgage on her house and lot. Prior to the maturity date of the note, she purchased for value 2 bonds of defendant given to a third person. Upon the maturity of her note, defendant advertised for sale, under the power of sale contained in the mortgage, her house and lot. She offered to surrender to him his bonds, then past due, held by her in partial discharge of her note and pay the balance due

in cash. He refused this offer. Plaintiff also alleged that defendant was insolvent. Her application for a restraining order was granted upon condition that she pay into court the sum alleged by her to be due after credit for defendant's bonds. This she did. Upon the hearing on the show cause order, defendant contended that he signed one of the bonds held by plaintiff as surety and it was, therefore, barred by the statute of limitations; that he had sold plaintiff's note prior to maturity to a third party; that if the sale of the note was not effectual, he was poor and entitled to have it set aside for his personal property exemption. The trial court denied the motion for injunction. On appeal, the Supreme Court held that plaintiff was entitled to have the material issues of fact raised by the pleadings tried by a jury, and the issues of law decided finally by the court in the ordinary course of trial, that "the substance of plaintiff's complaint is that the defendant is about to sell her house and lot, while she is entitled to have the mortgage under which he purports to act, and the debt secured by it, discharged by the application of the money due upon the two bonds she holds against him."

In the *Brown* case, plaintiff administratrix had brought an action to foreclose a mortgage given by defendants to her husband. Defendants contended there was nothing due on the mortgage because during plaintiff's intestate's lifetime they had made payments on the note and that plaintiff's intestate had cut timber on the lands which should be credited to the note; that the value of the timber exceeded the balance due. The plaintiff replied that the timber was cut at defendants' authorization and defendants had never accounted for the cutting. The defendant's evidence tended to show that the timber was cut at the instance of plaintiff's intestate for application on the mortgage. Plaintiff's evidence tended to show that one of the defendants had told the lumberman to log the timber but that plaintiff's intestate had directed that the proceeds be paid to him rather than defendants. The question on appeal was the correctness of the issues presented to the jury. In sending the matter back for a new trial, the Supreme Court noted that the main controversy between the parties was over the question of authority and responsibility for the cutting of timber on the mortgaged lands and liability therefor, the defendants contending it was done at the instance of and for the benefit of the mortgagee, the plaintiff contending it was done at the sole instance of the mortgagor. The Court, speaking through Seawell, J., said:

"The mortgagee in possession is liable to the mortgagor for timber cut and removed from the premises during such possession

at the instance or by permission of the said mortgagee, and for his benefit, and is compelled to credit the proceeds, or the market value, upon the mortgage debt. (citing cases) Where the mortgagee is not in possession, he is still liable to the mortgagor for timber which is cut upon the premises at his instance or through his agency and for his benefit, in the absence of a special agreement with the mortgagor, which would relieve him from such liability, whether the cutting is done with or without the consent of the owner and mortgagor."

[1]   We are aware that both the *Brown* case and the *Harrison* case involve mortgages. We think, however, that the principles enunciated therein are equally applicable to a case involving a deed of trust, as here. The defendants Byrd, holders of plaintiffs' note secured by a deed of trust, are liable to the plaintiffs for timber cut on the lands conveyed by the deed of trust, at the instance of the defendants Byrd or through their agency and for their benefit, absent a special agreement with the plaintiffs which would relieve the defendants of such liability.

[2]   Defendants' contention that plaintiffs have made no tender of the balance due and, therefore, cannot maintain their action is without merit. This is not an action to redeem. Plaintiffs allege that the note was not in default at the time the foreclosure was begun because the credit to which they were entitled would have paid all amounts due. The amount of the credit, if any, is in controversy, and we cannot say on this record, as in *Dennis v. Redmond*, 210 N.C. 780, 188 S.E. 807, that plaintiffs "knew, or in the exercise of due care could have known the exact amount due on the indebtedness, and tendered same."

Defendants contend that plaintiffs' own evidence clearly showed that, without regard to an acceleration clause, the note was in default at the time the foreclosure was begun. We do not agree.

We note that the deed of trust is not in evidence, nor are any of its terms a part of the record.

[3]   Plaintiffs' evidence tended to show that the defendant Z. B. Byrd, Jr., entered upon plaintiffs' land and cut timber therefrom without permission or consent; that no accounting therefor has been made with plaintiffs; that the value of the timber on the stump was $1,000; that the value of the timber at the mill was from $1700 to $2000; that there was approximately 30,000 board feet of mature pine saw timber having a diameter at the stump from 8 to 24 inches worth from $55 to $70 per thousand; that a tree farmer was used to get the timber out; that laps were left on the ground and in the

pond and on a tobacco bed; that the laps would have been worth about $200 as pulpwood; that the trees were damaged by the laps and the small timber destroyed by the tree farmer; that before the cutting of the timber the farm had a value of $18,000 and after the cutting, $13,000; that the defendant Z. B. Byrd, Jr., had a contract with plaintiffs to construct a pond on other land owned by them for $700; that the pond was not properly constructed; that that was a separate transaction and there was no agreement that defendant Z. B. Byrd, Jr., could cut timber on the 17.95 acre tract to pay for the construction of the pond.

The evidence, considered in the light most favorable to the plaintiffs, raises an inference which must be left to the jury that defendant Z. B. Byrd, Jr., entered upon the lands of the plaintiffs and without their permission or consent, cut timber therefrom. The evidence considered in the light most favorable to the plaintiffs would allow, but not compel, a finding that the value of the timber cut was sufficient, if properly credited to the debt, to leave the note not in default at the time the foreclosure was initiated.

Under the evidence in this record, we think the plaintiffs are entitled to have the damages, if any, to their land assessed by the jury.

For the reasons set out herein, there must be a

New trial.

MALLARD, C.J., and CAMPBELL, J., concur.